J-S60011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL ALPHONSE POTTER, | |
| Appellant | No. 3239 EDA 2014 |

Appeal from the PCRA Order Entered November 4, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0007337-2007

BEFORE:  BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED NOVEMBER 05, 2015**

Appellant, Michael Alphonse Potter, appeals from the November 4, 2014 order denying his petition for relief filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.   Appellant raises several ineffective assistance of counsel claims regarding his trial counsel, Michael A. Frisk, Jr.[1]  We affirm.

The PCRA court set forth the facts and procedural history of Appellant's case, as follows:

> A jury found [Appellant] guilty of three counts of robbery, one count of burglary, one count of aggravated assault, one count of conspiracy to commit robbery, one count of conspiracy to commit burglary and one count of criminal solicitation.  The

---

[1] As will be discussed in more detail, *infra*, Mr. Frisk has been temporarily disbarred.  Therefore, we will refer to him herein as Mr. Frisk, rather than Attorney Frisk.

Honorable Paul W. Tressler, now retired, presided over the trial and later imposed an aggregate sentence of 16 to 45 years in prison. [Appellant] filed a direct appeal to the Pennsylvania Superior Court, which affirmed the judgment of sentence. ***Commonwealth v. Potter***, No. [2028] EDA 2008, Memorandum (April 6, 2009).

In his [Pa.R.A.P.] 1925(a) Opinion, Judge Tressler explained that one of the robbery convictions was based upon [Appellant's] inflicting serious bodily injury on Joseph Hevener, while the other two robbery convictions were based upon [his] inflicting or threatening bodily injury on Hevener and his wife, Nancy Hevener, respectively. The Opinion further detailed that [Appellant], who was having an affair with Nancy Hevener[,]

> recruited two others to enter the victims' home as part of a conspiracy to steal a large sum of cash they kept on hand. One of the accomplices, Andrew Bing, testified that he met [Appellant] and another accomplice, Tyreke Lawson, on the morning of the burglary, and [Appellant] told Bing and Lawson that the victims kept $400,000 cash in their home. The three made a plan to steal the money while the victims were at home. According to the plan, Bing and Lawson would first enter the home and take the cash. [Appellant] drove Bing and Lawson to the neighborhood where the victims lived, parked his SUV in a concealed spot and sent his co-conspirators on their way. The burglary did not go as planned because the victims resisted, and after a vicious struggle, Bing and Lawson fled in a pickup truck owned by the victims. Joseph Hevener suffered serious bodily injuries including a cut that required approximately fifty stiches to close and permanent visual impairment that resulted [from] an attempt by one of the assailants to gouge out his eyes.

*Opinion*, Tressler, J., p. 2 (Sept. 18, 2008).

After the Superior Court affirmed the judgment of sentence, [Appellant] did not file a petition for permission to appeal to the Pennsylvania Supreme Court. His judgment of sentence, thus, became final on May 6, 2009. The following month, [Appellant] commenced post-conviction collateral proceedings. Ultimately, the Superior Court reversed the dismissals of [Appellant's] petition for post[-]conviction relief and a motion for new trial based on newly discovered evidence.

> ***Commonwealth v. Potter***, [No.] 2789 EDA 2010, Memorandum ([December 21, 2011]).[2]
>
> On remand, [Appellant], through privately retained counsel, filed an amended petition seeking post-conviction relief. The petition alleged trial counsel ineffectiveness, prosecutorial misconduct and an error in the trial court's charge to the jury regarding reasonable doubt. The Commonwealth filed an answer and motion to dismiss the petition.
>
> The undersigned, to whom the case had been reassigned, held a hearing and after consideration of the record, the petition, the Commonwealth's response and the evidence presented at the hearing, denied the petition by Order dated November 4, 2014. [Appellant] filed a notice of appeal to the Superior Court and complied with this court's directive to produce a Rule 1925(b) concise statement of errors.

PCRA Court Opinion (PCO), 1/27/15, at 1-3.

> On appeal, Appellant presents three issues for our review:
>
> a) Whether trial counsel was ineffective for failing to investigate and cross[-]examine the Commonwealth's key witness, Andrew Bing[,] about his prior convictions?
>
> b) Whether trial counsel was ineffective for failing to investigate and cross[-]examine Andrew Bing about his probationary status at the time of his testimony?
>
> c) Whether trial counsel was ineffective for failing to investigate [Appellant's] alibi defense?

Appellant's Brief at 3.

---

[2] This Court concluded that Appellant's initial PCRA counsel acted ineffectively by filing a deficient amended petition on Appellant's behalf. ***Potter***, No. 2789 EDA 2010 at 7. Consequently, we vacated the PCRA court's order denying Appellant's petition, and remanded for the appointment of new counsel and the filing of an amended PCRA petition on Appellant's behalf. ***Id.***

Initially, we note that, "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Morales*, 701 A.2d 516, 520 (Pa. 1997) (citing *Commonwealth v. Travaglia*, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

*Commonwealth v. Johnson*, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).[3]

_____

[3] Before delving into the merits of Appellant's issues, we note that Appellant's trial attorney, Mr. Frisk, testified at the PCRA hearing that he had a substance abuse problem at the time he represented Appellant at trial, and that his addiction subsequently led to a criminal conviction and a five-year
*(Footnote Continued Next Page)*

In his first issue, Appellant asserts that Mr. Frisk rendered ineffective assistance when he failed to cross-examine Commonwealth witness Andrew Bing about his prior convictions. Appellant explains that "[a]t the time of Appellant's trial, [] Bing had a prior record that included four (4) Felony convictions for selling drugs and conspiracy to sell drugs; a felony theft conviction; a conviction for Hindering Apprehension[; and a conviction for] False Swearing." Appellant's Brief at 14. Appellant argues that Mr. Frisk did not adequately investigate Bing's prior record and impeach him with these prior convictions, which was unreasonable and prejudicial because Bing "was the lynchpin of the prosecution's case[,] as he was the only witness that connected Appellant to the crime." *Id.*

Before addressing Appellant's argument, we begin by noting that Appellant's claim that Mr. Frisk acted ineffectively by not investigating and/or cross-examining Bing regarding his prior 'drug, conspiracy, and theft' convictions was not raised in Appellant's PCRA petition. Accordingly, it is waived. *See* Amended PCRA Petition, 9/17/13, at 2, 8-9; Pa.R.A.P. 302(a)

*(Footnote Continued)* _____

disbarment from the practice of law. *See* N.T. PCRA Hearing, 8/14/14, at 4-6. In his brief to this Court, Appellant states that Mr. Frisk's substance abuse problem "impacted his representation of Appellant" and "led to a constitutionally deficient representation at trial." *Id.* at 12. However, Appellant goes on to discuss counsel's purported ineffectiveness without specific elaboration on how Mr. Fisk's substance abuse issues affected his ability to represent Appellant. Appellant also does not cite any legal authority to support a conclusion that Mr. Frisk's addiction to drugs at the time he represented Appellant, in and of itself, constitutes deficient representation.

("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Roney*, 79 A.3d 595, 611 (Pa. 2013) (concluding that the appellant waived his "issue by his failure to have raised it before the PCRA court").

Additionally, Appellant has also failed to preserve this specific assertion in his Rule 1925(b) statement, in which he presented this issue as follows:

> b) Trial counsel rendered ineffective assistance of counsel by failing to impeach the Commonwealth's key witness, Andrew Bing, with his prior convictions **for False Swearing [and] Hindering Apprehension [or] Prosecution.** At the PCRA hearing, trial counsel testified that he did not check for the witness's prior record, and only learned about it through questioning the witness. He acknowledged that he relied on the witness to give his accurate criminal history, rather than research it himself, and that he had no strategic reason for doing that.

Rule 1925(b) Statement, 1/2/15, at 1-2 (citation to the record omitted; emphasis added). Because Appellant only referred to Mr. Frisk's failure to investigate and cross-examine Bing regarding his prior convictions for false swearing and hindering apprehension or prosecution, he has waived his claim that Mr. Frisk acted ineffectively regarding Bing's other convictions on this basis, as well. *See Commonwealth v. Hill*, 16 A.3d 484, 494 (Pa. 2011) ("Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple, bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; any issues not raised in a Rule 1925(b) statement will be deemed waived; the

courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions are not subject to *ad hoc* exceptions or selective enforcement; [and] Rule 1925 violations may be raised by the appellate court *sua sponte*….").

In regard to Bing's purported conviction for false swearing, the record demonstrates that that charge was *nolle prossed* in December of 2004. **See** PCO at 4 n.1 (citing N.T. PCRA Hearing, 8/14/14, at 88); **see also** Appellant's Brief, Exhibit "A" (summary of Bing's prior criminal history). Accordingly, Appellant has failed to prove that Mr. Frisk could have cross-examined Bing about this prior *charge*, which did not result in a conviction, and which was not outstanding or non-final at the time of Appellant's trial. **See** Pa.R.E. 609(a) ("For the purpose of attacking the credibility of any witness, evidence that the witness has been *convicted* of a crime[] … must be admitted if it involved dishonesty or false statement.") (emphasis added); **see also Commonwealth v. Buksa**, 655 A.2d 576, 580 (Pa. Super. 1995) ("[W]henever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury.").

Therefore, the only aspect of Appellant's first issue that could entitle him to relief is his allegation that Mr. Frisk acted ineffectively by not investigating and/or cross-examining Bing about his prior conviction for

hindering apprehension or prosecution.   As Appellant acknowledges, Mr. Frisk did ask Bing about his prior record, resulting in the following exchange:

[Mr. Frisk:] You have a prior record, don't you, sir?

[Bing:] Yes, I do.

[Mr. Frisk:] What is that prior record?

[Bing:] Drugs and stolen auto, that's it.

[Mr. Frisk:] Felonies?

[Bing:] Yes.

N.T. Trial, 4/8/08, at 63.   Appellant contends that had Mr. Frisk properly investigated Bing's prior record, he could have impeached Bing's testimony by pointing out that Bing had also been convicted of hindering apprehension.

The PCRA rejected this claim for several reasons, including the following:

The record from the trial indicates that [Mr.] Frisk cross-examined Bing about his prior *crimen falsi* conviction for stealing a car (N.T. 4/8/08, p. 63)….   The judge also noted Bing's prior *crimen falsi* conviction during his closing instructions to the jury, and gave the jury a "corrupt and polluted source" instruction in connection with Bing's testimony.   (N.T.[] 4/9/08, pp. 89-91) While [Mr.] Frisk did not cross-examine Bing regarding a prior conviction for hindering apprehension…, the jury was made aware that Bing had a prior conviction involving an offense of dishonesty….   Thus, [Mr. Frisk] cannot be deemed ineffective for failing to pursue cumulative evidence.

PCO at 5-6.

The record supports the PCRA court's determination that evidence of Bing's prior conviction for hindering apprehension or prosecution would have been merely cumulative of the evidence that he was convicted of a *crimen*

*falsi* theft offense. Accordingly, Appellant has not demonstrated that he was prejudiced by Mr. Frisk's failure to cross-examine Bing with this additional conviction.[4]

Next, Appellant argues that Mr. Frisk's representation was deficient because he did not cross-examine Bing about the fact that Bing "was on active probation during the commission of the crime on June 12, 2006, and when he testified against Appellant." Appellant's Brief at 19. In support, Appellant relies on our Supreme Court's decision in ***Commonwealth v. Murphy***, 591 A.2d 278 (Pa. 1991), where the Court concluded that trial counsel acted ineffectively by not cross-examining a key Commonwealth witness, Wanda Wilson, regarding her juvenile probationary status at the

---

[4] We also agree with the PCRA court that Appellant failed to prove that Bing's hindering apprehension or prosecution offense was admissible as a *crimen falsi* conviction. **See** PCO at 6. In ***Commonwealth v. Harris***, 658 A.2d 811 (Pa. Super. 1995), this Court held that hindering apprehension or prosecution, as defined in 18 Pa.C.S. § 5105(a)(4), is not necessarily a *crimen falsi* offense, unless the underlying facts of the conviction demonstrate that the defendant acted dishonestly or made false statements. ***Id.*** at 813-814; **see also** 18 Pa.C.S. § 5105(a)(4) (stating a person commits the offense of hindering apprehension or prosecution if they warn another "of impending discovery or apprehension"). However, ***Harris*** did indicate that a conviction for hindering apprehension or prosecution under subparagraphs (1)-(3) and (5) of section 5105(a) would qualify as *crimen falsi* offenses because they involve "some form of concealment, disguise, or providing the authorities with false information…." ***Id.*** at 813-814 (internal quotation marks omitted). Nevertheless, nothing in the record establishes under which subpart of section 5105(a) Bing was convicted. Consequently, Appellant has not proven that Bing's prior conviction for hindering apprehension or prosecution was a *crimen falsi* offense that Mr. Frisk could have used to impeach Bing.

time of Murphy's trial. *Id.* at 280. Namely, in finding that Murphy was prejudiced by counsel's failure, our Supreme Court stated:

> [Murphy] was clearly prejudiced by counsel's performance. Wilson was the only eyewitness to the crime and her testimony was crucial to the Commonwealth's case. Although the murder of [the victim] occurred in 1981, it was only after Wilson was re-interviewed and gave additional information to the police in 1985 that the Commonwealth was able to bring charges against [Murphy]. It was incumbent upon defense counsel to bring to the jury's attention the possibility that [the witness] had a motive for testifying against [Murphy], whether based upon a formal agreement with the prosecution or a subjective belief that she would receive favorable treatment with regard to her juvenile probation. If defense counsel was able to show that [the witness] was biased, it would have, in all probability, affected the outcome of the proceeding.

*Id.* (footnote omitted). Relying on *Murphy*, Appellant maintains that Mr. Frisk's failure to cross-examine Bing regarding his probationary status prejudiced Appellant.

While we accept that under *Murphy*, Appellant's claim of ineffectiveness has arguable merit, the record convinces us that Appellant was not prejudiced by Mr. Frisk's failure to cross-examine Bing about his probationary status. Unlike in *Murphy*, the jury in this case was made aware of the possibility that Bing had a motive for testifying against Appellant, albeit for reasons other than a hope for favorable treatment in Bing's probation case. Specifically, during Bing's direct examination, the Commonwealth asked him if he understood that (1) by testifying against Appellant, he was incriminating himself for various offenses, including robbery, burglary, aggravated assault, and conspiracy to commit each of

- 10 -

these offenses; and (2) each of those felony offenses carried a potential sentence of 20 years' incarceration. N.T. Trial, 4/8/08, at 61-62. Bing indicated that he understood these facts. *Id.* at 62. He was then asked if "any promises [had] been made to [him] in exchange for [his] testimony," to which Bing replied, "No." *Id.* at 62.

Immediately after that question and answer, Mr. Frisk began his cross-examination of Bing, as follows:

> [Mr. Frisk:] Sir, you don't recall a conversation you had with [the prosecutor] at a preliminary hearing where he told you the more you give us, the more we'll give you? Sitting in the room, next to – preparing to go into the preliminary hearing, [the prosecutor] here said, the more you give us, the more we'll give you.
>
> …
>
> Is that correct?
>
> [Bing:] Yes.
>
> [Mr. Frisk:] So there were no promises made. Sounds like [the prosecutor] has told you he will make promises; isn't that true?
>
> [Bing:] No. He didn't make no promises, though.

*Id.* at 62-63.

Mr. Frisk also emphasized that, due to Bing's prior record, he could "serve the rest of [his] natural life in jail" if he were convicted of the crimes listed by the Commonwealth. *Id.* at 64-65. Mr. Frisk then asked Bing, "And the District Attorney has promised you leniency in your case for this [testimony], correct?" *Id.* at 65. When Bing replied, "No, he hasn't[,]" Attorney Frisk stated: "You just told us [that the prosecutor] told you … the

more you do for me, the more I'll do for you. What does that mean to you?" *Id.* Bing then reiterated that no promises were made to him in exchange for testifying. *Id.*

In light of this record, the PCRA court concluded that Mr. Frisk adequately "cross-examined Bing about … the potential that Bing may have expected leniency in his own case related to the incident in return for testifying." PCO at 5. The court noted that "[w]hile [Mr.] Frisk did not cross-examine Bing regarding … his probationary status at the time of trial, the jury was made aware … [of Bing's] potential Bias." *Id.* at 4-5. Ultimately, the PCRA court concluded that the evidence of Bing's probationary status would have been cumulative. We agree. Based on Mr. Frisk's impeaching Bing, and emphasizing Bing's possible bias and motivation for testifying against Appellant, we conclude that Appellant was not prejudiced by Mr. Frisk's failure to present cumulative evidence of Bing's probationary status.

Finally, Appellant contends that Mr. Frisk acted ineffectively by failing to investigate Appellant's alibi defense. Initially, we agree with the Commonwealth that Appellant does not present a clear argument regarding *what* his alibi actually was. For instance, in his amended PCRA petition, Appellant stated that he "has consistently claimed that he was at the Philadelphia Sporting Club in Philadelphia at the time the crime was committed." Amended PCRA Petition, 9/17/13, at 11. Appellant further argued that, had Mr. Frisk investigated this alibi, he could have obtained

evidence that Appellant "checked in [to the Sporting Club] that morning and played basketball with other members at the club." *Id.* at 13. Appellant contended that "[i]t is unimaginable that trial counsel never contacted the club to ascertain whether [Appellant] entered the facility on the date in question, and he never sought to interview any club members … who would have been able to confirm [Appellant's] presence at the club that day." *Id.*

At the PCRA hearing, Appellant continued to maintain that his alibi defense was premised on his being at the Sporting Club in Philadelphia at the time of the crimes. In this regard, his PCRA counsel questioned Mr. Frisk as follows:

> [Appellant's Counsel:] Did you take any steps at all to investigate whether or not [Appellant] was actually at the Philadelphia Sporting Club at the time of this crime?
>
> [Mr. Frisk:] No.
>
> [Appellant's Counsel:] Did you go and ask for any video evidence from the Sporting Club or did you actually go to the Sporting Club or did you check and see whether he was a member there or interview any witnesses that might have been there at the time in any way?
>
> [Mr. Frisk:] No.
>
> [Appellant's Counsel:] But you were aware from [Appellant] that he maintained that he was there during this trial and before the trial?
>
> [Mr. Frisk:] Yes.
>
> [Appellant's Counsel:] Did you have any strategic reason for not taking those steps to investigate any potential alibi?
>
> [Mr. Frisk:] No, sir.

PCRA Hearing, 8/14/14, at 22.

- 13 -

To refute Appellant's claim that he was at the Sporting Club at the time of the robbery, the Commonwealth presented at the PCRA hearing the testimony of Laura Bruce, an employee of the club. Ms. Bruce testified that in 2006, members of the Sporting Club were required to check-in and present a membership card before entering. *Id.* at 45-46. The Commonwealth admitted into evidence, and presented to Ms. Bruce, a document that Ms. Bruce identified as a "visit listing," which demonstrated that Appellant checked into the Sporting Club at 10:59 a.m. on June 12, 2006, well after the early morning robbery at the Heveners' residence. *Id.* at 46-49.

Now, on appeal, Appellant seemingly abandons his alibi defense that he was at the Sporting Club in Philadelphia, instead averring that Mr. Frisk was ineffective for not investigating whether Appellant was in Atlantic City, New Jersey, the night before (and, presumably, the morning of) the robbery. *See* N.T. Trial, 4/9/08, at 23-24. It seems that this was the alibi asserted by Appellant during his trial testimony, wherein he stated that on the night of June 11, 2006, he went to Atlantic City, New Jersey, and did not return to the Philadelphia area until "around 5:00 o'clock in the morning…." N.T. Trial, 4/9/08, at 23-24. Appellant further claimed that he "was going to the gym to play basketball at six." *Id.* at 24. On cross-examination, the Commonwealth questioned Appellant as follows:

> [The Commonwealth:] Can anybody verify that you were in Atlantic City the night before?

[Appellant:] Yeah. Actually, I could probably get documentation from the casinos that I was at. Only because whenever you're a medium to high roller, as they call it, … you check-in with a card. That keeps track of how much money you spent, average bet. Anyone that goes to the casinos knows that.

[The Commonwealth:] Do you have it?

[Appellant:] Didn't know I would need that. Again, I can provide that for you if you need it.

*Id.* at 43. Appellant now maintains that "[i]f the documentation that [] [A]ppellant referred to existed, then it is without question that Appellant was prejudiced by counsel's failure to investigate and obtain those records." Appellant's Brief at 26.

Appellant's argument is insufficient to demonstrate that Mr. Frisk's purported failure to investigate *either* of his alibi defenses prejudiced Appellant. Ms. Bruce's testimony at the PCRA hearing refuted Appellant's claim that he was at the Sporting Club in Philadelphia at the time the Heveners were robbed. Thus, Appellant has not established that an investigation by Mr. Frisk into this alibi would have aided Appellant's defense, let alone changed the outcome of his trial. Likewise, Appellant presented no evidence to the PCRA court to support his alibi that he was in Atlantic City at the time of the crime. Therefore, he has not established that Mr. Frisk's investigation of this alibi would have resulted in a different verdict.[5]

_____

[5] We note that Appellant also argues herein that Mr. Frisk was ineffective for not investigating Appellant's alibi because, had counsel done so and discovered that it "could not [be] verified, [Mr. Frisk] may have counseled

*(Footnote Continued Next Page)*

In sum, we conclude that none of Appellant's claims of Attorney Frisk's ineffectiveness warrants relief. Therefore, the PCRA court did not err in denying his petition.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/5/2015

---

*(Footnote Continued)* ⸻

Appellant that testifying about an alibi without proof may not have been in his best interest, especially in light of the fact that the Commonwealth's case was flimsy." Appellant's Brief at 27. This argument was not raised in Appellant's PCRA petition. Therefore, it is waived. **See** Pa.R.A.P. 302(a); **Roney**, 79 A.3d at 611.